UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NTE LLC, a Nevada limited liability company,

    Plaintiff,

v.

KENNY CONSTRUCTION COMPANY, an Illinois corporation, NALCOR ENERGY, a Canadian corporation, AMEREN SERVICES COMPANY, a Missouri corporation, ELECTRIC TRANSMISSION TEXAS, LLC, a Delaware limited liability company, and ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation,

    Defendants.

No. 14 C 9558
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Defendant Nalcor has moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the following reasons, Defendant's motion is granted.

### I. BACKGROUND

**A. Factual Background**

Plaintiff NTE LLC ("NTE") is an Illinois-based software company that provides its clients with computer systems to improve their supply chain efficiencies. To do so, NTE generates proprietary data that clients can access through NTE's servers. In 2013, Nalcor Energy ("Nalcor"), a Canadian corporation, contracted with Granite Infrastructure Contractors, Inc. ("Granite") in connection with its hydroelectric construction project (the "Lower Churchill Project") in Newfoundland and Labrador, Canada. In the course of managing the project, Granite provided Nalcor with the use of NTE software with the cooperation of Granite's subsidiary, Defendant Kenny Construction Company ("Kenny").

NTE is an Illinois citizen with its headquarters and servers located in Illinois. Defendant Kenny is an Illinois citizen with its principal place of business in Chicago. Defendant Nalcor is a

1

Canadian corporation with its principal place of business in the Province of Newfoundland and Labrador, Canada. Although Nalcor claims it never directly contracted with Kenny and is affiliated only indirectly through Kenny's contract with Granite, Plaintiff alleges that Nalcor did "effectively [contract] with" Kenny to manage some of its projects. Granite is a Canadian corporation.

Pat Hussey, a Supply Chain Manager for Nalcor's Lower Churchill Project, submitted an affidavit in support of Nalcor's motion to dismiss. Hussey asserts that the Lower Churchill Project is located entirely within Canada and that Nalcor's only connection to Kenny was through its contract with Granite, which was formed in the Province of Newfoundland and Labrador, Canada and took place entirely abroad.

Hussey claims that the parties' contract does not name which software system Granite would provide for the Lower Churchill Project and that Hussey did not know whether the software he was using, which NTE claims to own, belonged to Granite itself or to a third party. In fact, Hussey claims not to know of the existence or location of NTE until reviewing the First Amended Complaint in this litigation. Like Nalcor itself, Hussey also asserts that to his knowledge Nalcor has never conducted business, owned or managed property, maintained a bank account, or incurred tax liability in Illinois, nor has it signed any contracts with Illinois companies in the last five years. Nalcor also offers six other employee affidavits disavowing knowledge of NTE, its location, or the location of its servers.

**B. Basis for Litigation**

In December 2014, NTE filed a copyright infringement and misappropriation suit against Kenny and certain of Kenny's customers, including Nalcor, alleging that Kenny illegally extracted proprietary data from NTE's cloud-based software system and gave it to an NTE competitor. As a result, NTE claims that Nalcor and others of Kenny's clients have unlawfully and intentionally accessed NTE's proprietary data through the competitor's system without obtaining an NTE license or subscription. Nalcor is charged with both direct and vicarious copyright infringement arising under 17 U.S.C. § 501 and unjust enrichment.

2

## II. DISCUSSION

Defendant Nalcor has moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Plaintiff does not allege that Nalcor is subject to general personal jurisdiction. As discussed below, the court finds that Nalcor is not subject to specific personal jurisdiction in Illinois.

### A. Legal Standard

The plaintiff bears the burden of establishing personal jurisdiction when the defendant moves to dismiss under Rule 12(b)(2). *Tile Unlimited, Inc. v. Blanke Corp.*, 47 F.Supp.3d 750, 755 (N.D. Ill. 2014). When, as here, the court relies only on the parties' written materials to rule on the motion to dismiss, the Plaintiff need only make a prima facie case for personal jurisdiction. *Henneberger v. Ticom Geomatics, Inc.*, 602 Fed.Appx. 352, 353 (7th Cir. 2015). In evaluating whether the Plaintiff has met this burden, the court must accept all of the Complaint's well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Eagle Air Transport, Inc. v. National Aerotech Aviation Delaware, Inc.*, 75 F.Supp.3d 883, 886 (N.D. Ill. 2014).

Federal district courts exercising diversity jurisdiction may only assert personal jurisdiction if a court of the state in which the court sits would have jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997). The exercise of jurisdiction in Illinois must comply with the Illinois Long-Arm Statute, the Illinois Constitution, and Federal Due Process. *See Citadel Group Ltd. v. Wash. Regional Medical Center,* 536 F.3d 757, 760–61 (7th Cir.2008). Because the relevant state statute extends to the outer limits of the Illinois and United States Constitutions, 735 ILCS 5/2–209(c), courts often proceed directly to the Federal Due Process analysis. *Citadel Group,* 536 F.3d at 760–61.

The Due Process Clause of the federal constitution asks whether a non-resident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). To give rise to minimum contacts,

the defendant must have purposefully availed herself of the privilege of conducting activity within the forum state, thus invoking the benefits and protections of the laws of the forum state. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299 (1980); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76 (1985). Such activity should make it foreseeable that the defendant would be haled into a court of that state. "[R]andom, fortuitous, or attenuated contacts" with the forum state do not establish foreseeability. *Daniel J. Hartwig Assoc., Inc. v. Kanner,* 913 F.2d 1213, 1218 (7th Cir.1990) (internal quotes omitted).

### B. Specific Personal Jurisdiction

The question of whether a State has specific jurisdiction over a defendant focuses "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1118 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Minimum contacts analysis looks to the defendant's contacts with the State itself, not with persons who reside there. *Walden*, 134 S. Ct. at 1118. *Walden* makes clear that these principles also apply when the claim at issue is an intentional tort.[1] *Id*. at 1123. In tort cases, as in others, it is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts" with the forum. *Id*. (internal quotations and citations omitted). Jurisdiction over an intentional tortfeasor "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id*.

In this case, NTE alleges that Defendant accessed NTE's Illinois-based servers to commit copyright infringement, knowing the effects would be felt in Illinois. Eighty four of these occasions allegedly occurred after Defendant had been served with this lawsuit. NTE lays out several arguments urging an inference that Nalcor knew its conduct was aimed at Illinois. First, Defendant received a handful of maintenance and customer service emails from Plaintiff with NTE's Illinois address in the signature block. Defendant also allegedly accessed the NTE system through a URL

---

[1] There may be debate on whether copyright infringement is, in fact, an intentional tort. Here, however, both parties have treated these claims as intentional torts in their briefing, which resolves this issue for my purposes.

4

that included NTE's name (http://kccnalcor.nte.com), which NTE argues put Defendant on notice of NTE's existence. Finally, NTE alleges that Defendant's contract with Granite contained references to Granite's sister corporation (and named Defendant) Kenny's Northbrook, IL headquarters. The contract also required amendments and other notices to be sent to Kenny's Illinois headquarters.

Plaintiff bases much of its legal argument on *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010), a case detailing what was then the Seventh Circuit's approach to specific jurisdiction for intentional torts. However, that case attached great weight to the effects or injury felt in the forum state. *Id*. After *Walden*, this approach is likely no longer good law. *See Walden*, 134 S. Ct. at 1125 ("The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014) ("[A]fter Walden there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' *Walden*, 134 S.Ct. at 1122. Any decision that implies otherwise can no longer be considered authoritative.").

In this case, Plaintiff has adequately pleaded they suffered damage in Illinois, but not that Defendant connected itself to Illinois in any meaningful way. I will address each of Plaintiff's minimum contacts arguments in turn.

**1. The Granite-Nalcor Contract**

Plaintiff alleges that Defendant's contract with Granite meaningfully links Defendant to Illinois because Defendant presumably saw the references in the contract to Kenny's Illinois headquarters and was aware that any amendments or notices to the contract had to be mailed to Kenny in Illinois. But the Granite-Nalcor contract was a contract between two Canadian companies for services in Canada. The mere mailing of notices into Illinois is purely "fortuitous" and does not purposefully avail Defendant of the protection of Illinois law. Similarly, the fact that Patrick Kenny, who signed some amendments to the contract, is an Illinois resident does not constitute purposeful

5

availment, since any contact between Nalcor and Patrick Kenny or Kenny Construction Company was merely incidental to the contract with Granite. *Advanced Tactical*, 751 F.3d at 796 ("Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement."). Contacts with third parties are the type of "attenuated contacts" declared insufficient in *Walden*. 134 S. Ct. at 1123. The slight connection between the Granite-Nalcor contract and Illinois does not link Nalcor to the forum for purposes of personal jurisdiction.

### 2. NTE's Website and Emails

Likewise, the emails from NTE to Defendant are insufficient to establish jurisdiction, as they are "unilateral activity" of the plaintiff. *See Walden*, 134 S. Ct. at 1223. Nor does accessing a URL with "NTE" in the text establish that Defendant aimed its actions at Illinois. The URL itself does not indicate where NTE is located and, even drawing all reasonable inferences in favor of the Plaintiff, it is not reasonable to expect that anyone who accesses that URL will then research where NTE is located.

Moreover, even if Defendant knew NTE was located in Illinois, email and URL activity would not necessarily affect personal jurisdiction. The Seventh Circuit recently noted that "email does not exist in any location at all; it bounces from one server to another... and it winds up wherever the recipient happens to be at that instant." *Advanced Tactical*, 751 F.3d at 803. The same is true of visiting a website where the user, operating only from a foreign state, has no control over or notice of the web server's physical location. This online activity is unlike other examples of minimum contacts because the act of visiting a website that is not situated in a specific geographical location does not purposefully avail the user of the protection and benefit of the server state's laws.

### 3. Accessing NTE's Illinois-Based Servers

Post-*Walden*, purposeful availment for intentional torts depends on whether the defendant knows he is committing a tort in the forum. Therefore, determining whether accessing Illinois-based servers constitutes targeting the forum raises the question of whether or not Nalcor knew of the

6

servers' location at the time of the activity. This is consistent with the approach of two cases in this district dealing with questions of personal jurisdiction and server access. *See Stat Imaging, LLC v. Medical Specialists, Inc., P.C.*, 2013 WL 3811643 (N.D. Ill. July 22, 2013) (rejecting the argument that a party's accessing of servers in the forum state constitutes targeting that state); *Experian Info. Solutions, Inc. v. I-Centrix LLC*, No. 04 C 4437, 2004 WL 2643459 (N.D. Ill. Nov. 19, 2004) (holding that unknowing use of Illinois-based servers does not on its own create minimum contacts).

Plaintiff cites several cases in which courts found personal jurisdiction as a result of accessing servers, but at least two of these cases notably involved defendants who clearly knew where the servers in question were located. *See, e.g., Rhapsody Solutions, LLC v. Cryogenic Vessel Alternatives, Inc.*, No. H–12–1168, 2013 WL 820589, at *5 (S.D. Tex. Mar. 5, 2013) (finding personal jurisdiction *because* evidence showed defendant knew of server location); *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (finding personal jurisdiction over a former employee who knew the location of servers). The remaining cases cited by Plaintiff are either ambiguous as to whether the defendant knew of the server's location, or were decided on principles that are no longer apposite post-*Walden*.

Plaintiff argues that individual facts, each of which fail to grant personal jurisdiction on their own, can be taken together to show that Nalcor knew NTE's servers were in Illinois at the time it accessed them. But the clues that NTE claims should have put Nalcor on notice of their location, such as a mailing address in a contract with a third party or a signature line at the bottom of a few mass emails, are too unobtrusive and speculative to raise a reasonable inference that Nalcor knew of NTE's or its server's Illinois location. In fact, the only facts related to location in the record are in affidavits by Nalcor employees disclaiming any knowledge that NTE was based in Illinois. These affidavits may be given weight when the plaintiff does not rebut them with affirmative evidence. *Hill v. Capital One Bank (USA), N.A.*, No. 14-CV-6236, 2015 WL 468878, at *3 (N.D. Ill. Feb. 3, 2015). Thus, even taking all reasonable inferences in favor of the Plaintiff, I am not able to infer that

7

Defendants knew that NTE's servers were located in Illinois and could reasonably expect to be haled into court as a result of their activities.

Plaintiff's final argument is that Defendant accessed NTE's servers 84 times *after* being served with this lawsuit, indicating that they knew of NTE's location at that time yet continued to intentionally access the NTE server. This raises two questions: a case-specific inquiry into whether the lawsuit put Nalcor on notice of NTE's server locations, and a general question of whether actions that occur after a lawsuit begins can ever subject a defendant to personal jurisdiction in that lawsuit. On the first question, I find no language in either the First Amended Complaint or the original Complaint stating the location of NTE's servers. The Complaint does say that NTE's principal place of business is in Illinois, but as Defendant has pointed out, the nature of cloud-based computing is such that servers are not necessarily in the same physical location as the company. Thus, Plaintiff has not pleaded facts showing that Nalcor knew NTE's servers were in Illinois.

Regardless of whether or not the lawsuit put Defendant on notice that NTE's servers were also located in Illinois, I do not consider post-filing access to the servers to be relevant for jurisdictional purposes. The question of whether post-filing contacts can invest a forum with personal jurisdiction has not been addressed by the Seventh Circuit, but that court has said that it will not weigh post-filing facts in deciding whether or not to divest jurisdiction. *See Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997) ("requirements for diversity jurisdiction must be satisfied only at the time a suit is filed."); *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991) (entertaining post-filing facts "would be an invitation to strategic behavior."); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").

Furthermore, at least two courts in this district have found that post-filing contacts cannot be counted towards personal jurisdiction. *See Haggerty Enterprises, Inc. v. Lipan Indus. Co.*, No. 00 C 766, 2001 WL 968592, at *4 (N.D. Ill. Aug. 23, 2001) (finding that product sales after a suit had

been filed could not be considered because they invite strategic behavior); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 910 (N.D. Ill. 1999) (declining to consider post-filing contacts for purposeful availment analysis). In part, this is because post-filing contacts cannot serve the Due Process purpose of the minimum contacts doctrine—that is, they cannot give the defendant fair warning that he could be "haled into court in the forum state" before the lawsuit is filed. *Id*.

I join my colleagues in deciding that post-filing contacts are not relevant for personal jurisdiction analysis. This approach minimizes the risk of parties strategizing to generate jurisdiction and ensures that a defendant has the fair warning Due Process requires *before* a suit is filed, not after.

For the above reasons, I find this court does not have specific personal jurisdiction over Defendant Nalcor.

### III. CONCLUSION

Defendant Nalcor's motion to dismiss for lack of personal jurisdiction is granted. Plaintiff NTE's request for additional limited discovery to prove jurisdiction is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: October 21, 2015